## TEXAS EMPLOYERS' INS. ASS'N v. FORT WORTH & D. C. RY. CO.

### No. 5634.

Court of Civil Appeals of Texas. Amarillo.

June 19, 1944.

T. R. Boone, of Wichita Falls, and Curtis Renfro, of Vernon, for appellant.

Barwise & Wallace, of Fort Worth, and Storey, Storey & Donaghey, of Vernon, for appellee.

HEARE, Justice.

Texas Employers Insurance Association, the carrier of workmen's compensation insurance for Vernon Cotton Oil Company, employer, instituted this suit against the Fort Worth & Denver City Railway Company for $1596.86 plus $650, attorneys' fees, alleging that Jimmie Grimes, an employee of Vernon Cotton Oil Company, was injured while in the course of his employment by reason of the negligence of the railway company in maintaining a defective freight-loading platform in Vernon, Texas; that the insurance carrier had paid to the employee, or for his benefit, the amount of $1596.86, as benefits under the Workmen's Compensation Law; and that the third party had full knowledge of such payments and of the subrogation rights of the insurance carrier.

The insurance carrier also sought to predicate recovery from the railway company (which we shall also refer to as third party) on the following allegation: "Plaintiff would further show the court that thereafter, in utter disregard of plaintiff's rights in this matter, towit: on or about

the first of July, A.D. 1942, the Railway Company sought to settle with the said Jimmie Grimes for the liability that they owed him over and above the sum of $1596.86, and did settle with said Claimant for his rights in the matter, that had not previously been assigned to this Plaintiff, by paying him an additional sum of $300.00 and, hence, the Defendant became liable to this Plaintiff for the sum of $1596.86."

The railway company pleaded a denial of injury, negligence of the employee, and a denial of negligence on the part of the railway company. It further pleaded that if Grimes was suffering any disability, it was due to disease rather than injury. It admitted the payment of $300 to Grimes and admitted liability to the insurance carrier in that amount, plus a reasonable attorney's fee, and tendered the same into court, alleging that it had theretofore made tender of such amount to the insurance carrier but that such tender had been refused.

The case was submitted to the trial court without a jury. The parties stipulated that one third of any amount recovered by the insurance carrier should be included in the judgment as a reasonable attorney's fee. The trial court entered judgment in favor of the insurance carrier for the sum of $300, plus an additional amount of $100 as attorney's fee, and on request of the appellant, filed findings of fact and conclusions of law.

The fact findings of the trial court were to the following effect: The railway company had a loading platform in Vernon for the use of shippers. Jimmie Grimes, an employee of Vernon Cotton Oil Company, together with other employees, took several bales of cotton to this loading platform on November 25, 1941, and unloaded them thereon. Thereafter, Grimes was walking across the platform when he stepped on a board which broke or gave way, causing him injury. At the time of his injury Grimes had no business on the platform in connection with his work for his employer and it was not necessary for him to have been on the platform. Damages attributable to the injury suffered by Grimes amounted to $750, plus doctors' bills, hospital bills, and a reasonable attorney's fee to the extent of one third of the recovery. It was the duty of the railway company, under the existing tariff, to load the cotton from the platform into the cars for shipment. The railway company did not know "the board on the platform was weak or in any way damaged" prior to the time Grimes was injured. The railway company made almost daily inspection of the platform to ascertain its condition and had inspected the platform not more than two days before the injury, possibly the day before. The railway company was not guilty of negligence in the manner and mode of the maintenance and construction of the platform. Grimes' employer was carrying workmen's compensation insurance with the Texas Employers' Insurance Association. The railway company, with knowledge of the settlement that had been made by Texas Employers' Insurance Association, made a settlement with Grimes, paying him $300, and took a release from him.

The trial court concluded, as a matter of law, that the insurance carrier plaintiff was entitled to judgment against the railway company for the sum of $300, being the amount the railway company had theretofore paid to Jimmie Grimes.

The insurance carrier excepted to only one finding of fact by the court, namely, Number Five, to the effect that it was not necessary for Grimes to have been on the platform and that he had no business thereon in connection with his work for his employer.

The appellant presents five points of error, which may be grouped into two controlling issues. The appellant contends, first, that under the law the undisputed evidence convicts the railway company of negligence in the manner and mode of maintenance and construction of the platform; and, secondly, that by reason of the appellee having made a settlement with the employee, it became liable to the appellant for the full amount of the appellant's subrogated claim as insurance carrier.

The law requires railroad companies to maintain suitable freight depots and buildings for receiving, handling, storing, and delivering all freight handled by such roads. Article 6498, R.C.S. 1925. Moreover, the Railroad Commission is charged with the duty of requiring the various railroads to keep and maintain adequate and suitable freight depots and buildings for the receiving, handling, storing, and delivering, of all freight handled by such roads. Article 6448, Section 10, R.C.S. 1925. Grimes was an invitee on the premises and the railway company was bound to use

830

ordinary care to save him from injury while upon the premises. Missouri, K. & T. Ry. Co. of Texas v. Kinslow, Tex.Civ.App., 172 S.W. 1124. The charge of negligence against the railway company was that the company, its servants, agents, and employees were negligent "in the manner and way that they maintained their platform which was owned and under the exclusive control of the defendant and that the same was not reasonably safe for persons, working with their consent, on and near said platform, and due to the fact that the platform was worn and in a defective and unsafe condition for a sufficient length of time whereby the railway company knew, or could have known by the exercise of ordinary care, that the same was defective."

There is evidence in the record to support the findings of regular and almost daily inspections of the platform to ascertain its condition, and of an inspection by an agent of the company shortly before the accident. There is evidence to support the finding that the railway company did not know that the board on the platform was weak or in any way defective prior to the time Grimes was injured. We are therefore also of the opinion that there is evidence to support the finding that the railway company was not guilty of negligence in the manner and mode of the maintenance and construction of its platform. The burden of proof on this issue was on the appellant. No exception was reserved by the appellant to these findings by the trial court. There being evidence to support them and no exception having been reserved, they are binding on this Court. The appellant's contention as contained in its first three points of error is overruled.

The second contention of the appellant presents a more difficult question. The appellee was acquitted of any negligence rendering it liable to the employee for any damages and was thereby acquitted of any primary liability to the appellant by virtue of the appellant's subrogated claim. It follows, therefore, that any liability which may exist against the third party appellee in favor of the insurance carrier must be by virtue of the terms of Article 8307, Section 6a, R.C.S. 1925. That section provides as follows:

"Sec. 6a. Where the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employe may at his option proceed either at law against that person to recover damages or against the association for compensation under this law, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under this law. If compensation be claimed under this law by the injured employe or his legal beneficiaries, then the association shall be subrogated to the rights of the injured employe in so far as may be necessary and may enforce in the name of the injured employe or of his legal beneficiaries or in its own name and for the joint use and benefit of said employe or beneficiaries and the association the liability of said other person, and in case the association recovers a sum greater than that paid or assumed by the association to the employe or his legal beneficiaries, together with a reasonable cost of enforcing such liability, which shall be determined by the court trying the case, then out of the sum so recovered the association shall reimburse itself and pay said cost and the excess so recovered shall be paid to the injured employee or his beneficiaries. The association shall not have the right to adjust or compromise such liability against such third person without notice to the injured employe or his beneficiaries and the approval of the board, upon a hearing thereof."

We find no case wherein the courts of Texas have made direct application of facts similar to those in the instant case to the above-quoted statute. We find no case reported wherein the third party has paid to the employee in settlement a sum less than the subrogated claim of the association without the consent of the association.

In the case of Traders & General Ins. Co. v. West Texas Utilities Co., 140 Tex. 57, 165 S.W.2d 713, 716, the employee had filed a suit against the third party based on negligence and had impleaded the association (insurance carrier) and had recognized its subrogated claim. The insurance carrier filed its plea of intervention, setting up its rights of subrogation under the statute and prayed for judgment against the third party and the employee for the amount of compensation it had paid to the employee, together with the expenses. Thereafter, the employee made a compromise settlement with the third party without the knowledge or participation of the insurance carrier and dismissed his suit

for damages against the third party, the court reciting in the order of dismissal that it was without prejudice to the rights of the insurance carrier. The amount of money paid in settlement by the third party to the employee was in excess of the amount of the insurance carrier's subrogated claim. Whereupon, the insurance carrier amended its pleading, retaining the allegations of negligence and of its subrogation rights and pleaded as an additional ground for recovery the making of the settlement without its consent, participation, or approval and with full knowledge of its rights of subrogation, and sought judgment against both the company and the employee for the full amount due under its subrogated claim. The insurance carrier presented no testimony relating to the alleged acts of negligence by the third party and relied wholly upon the settlement made between the employee and the third party as a basis for its recovery.

The Supreme Court, in sustaining the right of the insurance carrier to recover the amount of its subrogated claim from the third party, noted that the amount paid to the employee by the third party was in excess of the insurance carrier's claim and was in settlement of the alleged damages, and held that the money thus paid occupied the same place in the controversy as it would have occupied if the case had proceeded to judgment upon the established negligence of the third party. We quote from the opinion:

"While the question presented has not been directly decided heretofore by this Court, the principle upon which the decision is rested has been applied in somewhat analogous holdings with respect to the wrongful payment of money in Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W. 2d 265; Allison v. Stanolind Oil & Gas Co., 133 Tex. 540, 129 S.W.2d 267, and Shell Petroleum Co. v. Tippett, Tex.Civ. App., 103 S.W.2d 448, writ refused."

An examination of the foregoing authorities cited by the Supreme Court clearly reveals that the underlying principle upon which the decision was grounded was the liability of a party who pays money to one person, knowing that under the law it belongs to another.

The question of whether or not in the instant case the insurance carrier was entitled to recover the amount awarded it in the judgment of the court below is not be-

fore this Court. The railway company admitted liability for that amount and makes no complaint of the judgment awarding the same to the insurance carrier. The question presented by this appeal is whether the appellee, in the position of third party, having paid $300 to the employee and having taken his release, thereby became liable to the appellant insurance carrier for a far greater amount, namely, the amount of compensation benefits which the insurance carrier had paid to, or expended in behalf of, the employee.

Had the insurance carrier established that the railway company as third party was guilty of negligence which created a legal liability in it to pay damages in respect thereof, then such liability would have inured to the benefit of the insurance carrier, and if the damages were of sufficient amount fully to compensate the insurance carrier, then it would have been fully compensated. But here we have a case where the third party has been fully acquitted of negligence by the trial court. The insurance carrier was entitled to seek a recovery of all of its subrogated claim on the ground of negligence. This it attempted, but failed. There is neither allegation nor proof that the act of the railway company in making settlement with the employee in anywise hindered or obstructed the ability of the insurance carrier to establish a case of negligence against the alleged tort-feasor. We therefore have a case wherein the insurance carrier is entitled to no cake at all by reason of any alleged negligent act on the part of the railway company, yet is being presented with a portion of a cake because the railway company saw fit to buy its peace from the employee. The payment of $300 in settlement to the employee was not in itself an admission by the railway company of negligence and consequent legal liability to the insurance carrier. Whitney v. Louisville & N. R. Co., 296 Ky. 381, 177 S.W. 2d 139. The insurance carrier, having failed to establish negligence as a basis for liability to it by the railway company, was relegated to its remaining claim of liability predicated on the wrongful payment of money to the employee, to which money, under the statute, the insurance carrier held a subrogated claim. The amount of money which was alleged to have been wrongfully paid totaled only $300. The railway company admitted its liability to the insurance carrier for that amount and

tendered the same into court together with an attorney's fee.

In the light of the record before us, we are unable to perceive any basis for liability of the appellee to the appellant in any amount greater than that awarded by the judgment of the trial court. The judgment of the trial court is therefore affirmed.